# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA:
:
      -vs-            :        No.  3: CR-17-326
:
OMAR SANTIAGO-MUNIZ,   :
           Defendant :
:

## GOVERNMENT'S RESPONSE TO
## DEFENDANT'S PETITION FOR RELEASE

On or about October 24, 2017, the defendant was charged in an indictment with production and attempted production of child pornography, 18 U.S.C. Section 2251(a) and (e), enticement of a minor to engage in sexual activity for which any person could be charged with a crime, 18 U.S.C. Section 2422(b), and transferring obscene material to a minor, 18 U.S.C. Section 1470. The defendant had an initial appearance before U.S. Magistrate Judge Joseph F. Saporito, Jr, and was ordered detained. Judge Saporito found that the government presented clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. Judge Saporito noted that the

1

weight of the evidence was strong and the defendant was subject to a lengthy period of incarceration if convicted.

The defendant, through counsel, has filed a "Motion for Pre-trial Release." In the motion, the defendant sets forth his age, education, community ties, employment history, diplomas and certificates, his status while on bail for related state charges, and character references from family, friends, and neighbors. He requests pre-trial release, claiming that he is not a flight risk nor a danger to the community.

The government, for the reasons set forth below, strongly opposes the request for pre-trial release. This Court has jurisdiction to review the magistrate judge's decision under 18 U.S.C. § 3145(b). That section requires this court to make a *de novo* determination of the findings of fact underlying the detention Order. *United States v. Delker,* 757 F.2d 1390, 1394 (3d Cir.1985). However, the reasons articulated by the magistrate judge must be given "respectful consideration." *United States v. Suppa,* 799 F.2d 115, 120 (3d Cir.1986).

The production of child pornography offense is punished by a mandatory minimum 15-year prison sentence and a potential maximum sentence of 30 years in prison. The enticement of a minor offense is

punishable by a mandatory minimum 10 years in prison and a potential maximum sentence of life in prison. Therefore, under the Bail Reform Act, 18 U.S.C. § 3142, there is a presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community . . . ." (See 18 U.S.C. § 3142(e)(3)(B)). Congress has determined that sexual crimes against minors are so serious that there is a presumption against release in such cases. United States v. Minnici, 128 Fed. Appx. 827, 829 (2d Cir. 2005) (not precedential). That presumption is subject to rebuttal by the defendant, but even if the defendant rebuts the presumption this court must weigh the factors set forth in the Bail Reform Act to determine whether the defendant is a flight risk or a danger to any person or the community.

The government initially submits that the defendant has not rebutted the presumption that he is a flight risk and a danger to the community. The defendant argues that he has significant community ties, which is true. He further contends that the fact that he did not flee when facing related state charges shows that he is not a flight risk when facing the current federal charges.

The state charges, according to the defendant's own motion, carried a potential maximum sentence of 28 years in prison. There was no mention of any mandatory minimum sentence nor did the defendant estimate a state guideline range that he faced if convicted. If the defendant is convicted of the federal charges, he faces a potential maximum sentence of life in prison, and mandatory minimum sentences of 15 years and 10 years, respectively for production of child pornography and enticement of a minor. The defendant acknowledges that the federal charges "could arguably be considered more serious." Based on the mandatory minimum sentences and the potential life sentence, the federal charges are definitely more serious. The defendant's likely guideline range in federal court, if he is convicted, is 235-293 months in prison.

Given the much more serious mandatory minimums and potential maximum penalties involved in the federal case, the fact that the defendant did not flee when released on bail in his state case carries less weight than it otherwise would. His stated willingness to be placed on house arrest should also count for little because home confinement with electronic monitoring is a mandatory condition of pre-trial release

for a defendant charged with producing child pornography and enticement of a minor.

The defendant's work record/employment history also includes several disciplinary infractions. On January 31, 2015, the defendant was cited at work for violating prison conduct with respect to his personal property (a cell phone) and lying about it to his supervisors. He only recanted his lie when prison camera videos proved that he was not being truthful in his explanation of the conduct violation. He was suspended without pay for that disciplinary infraction. On January 1, 2016, the defendant received a written warning for failing to comply with a lawful order of a superior officer. On July 8, 2017, the defendant was cited for allowing inmates out of their cells during a lockdown period which resulted in an inmate altercation in which one inmate was injured and required hospitalization. Between September 24 and August 13, 2017, he was cited 13 times for unexcused absences (this was after his arrest on the related state charges). The defendant submitted his resignation on August 15, 2017.

The diplomas and certificates attached to his motion were earned by the defendant in 2014, three years before he allegedly committed the instant crimes.

The character letters attached to the motion are from family and friends. The crimes the defendant allegedly committed are not the type of crimes that family and friends often know about. They are crimes committed in secret. Child pornography and child sex offenders do not reveal this side of themselves to friends and family. In almost every child sex exploitation case that I have prosecuted during the past 15 years, family and friends are shocked and express disbelief that the person they love and admire committed these kinds of offenses.

The presumption of § 3142(e) shifts to the defendant only the burden of producing evidence that defendant is neither a danger nor a flight risk; the burden of persuading the court that defendant is dangerous or will not appear for trial remains with the government. *United States v. Suppa,* 799 F.2d 115, 119 (3d Cir.1986). To rebut the presumption of detention, the defendant "must produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *United States v. Carbone,* 793 F.2d

559, 560 (3d Cir.1986). To meet its burden of persuasion, the government must prove by clear and convincing evidence that the defendant is a danger to the community, or by a preponderance of the evidence that he poses a risk of flight if released pending trial. *United States v. Himler,* 797 F.2d 156, 160–61 (3d Cir.1986).

Nothing presented by the defense effectively rebuts the presumption of detention in this case. He has not rebutted the presumption that he would be both a flight risk and a danger to any person and the community if placed on pre-trial release.

Even if this court determines that the presumption has been rebutted, the court must then determine if the government submitted "clear and convincing evidence" that the defendant poses a danger to the community or proved by a preponderance of the evidence that he would pose a flight risk if released. United States v. Winther, No. CRIM. 11-212, 2011 WL 1882453, at *1–2 (E.D. Pa. May 18, 2011).

The factors this Court must consider in determining whether or not to release the defendant from detention pending trial are set forth in 18 U.S.C. Section 3142(g).  The government respectfully submits that

those factors reinforce the presumption that this defendant should be detained pending trial.

1. **The nature and circumstances of the offense, including whether the offense involves a minor victim.**

The charges in this matter stem from an investigation conducted by special agents from Homeland Security Investigations (HSI). That investigation revealed the following:

On June 28, 2017, Pennsylvania State Police (PSP) Trooper Anthony Reppart, Computer Crimes Unit (CCU), was shown by the mother of Victim #1 and the stepmother of Victim #2, evidence of the minors communicating over Facebook using Victim #1's cellular telephone with a then-unidentified subject, Facebook user name "Jade Miller." Tpr Reppart observed conversations on Victim #1"s cellular telephone located in Facebook Messenger. In messages between the Victim #1 and "Jade Miller," Victim #1 informed "Jade Miller" that she was 10-years-old and her step-sister was 9-years-old. The conversations included "Jade Miller" offering Victims #1 and #2 the sum of $50 to engage in sexual contact with an unidentified adult male in a park in McAdoo, Schuylkill County, PA. Tpr Reppart also observed "Jade Miller" sending pictures of adults engaged in sexual activity and "Jade

Miller's" conversation requesting Victims #1 and #2 to take and send photographs of themselves in their underwear and later  photographs of them naked exhibiting their vaginas.

The victims were interviewed. They stated that on June 27, 2017, each took and sent photographs of their exposed vaginas at the request of "Jade Miller." Tpr Reppart and PSP forensics were able to retrieve the images sent by the girls which included photos of them naked showing their vaginas.  Tpr Reppart took possession of the cellular telephone and received the victim's guardian's consent to assume the Facebook identities of the victims.

On June 30, 2017, Tpr Reppart obtained Administrative Subpoenas for Facebook for account number 100016897816089, belonging to user "Jade Miller."  Tpr Reppart subsequently subpoenaed five Comcast Communications IP addresses Facebook identified as associated with user "Jade Miller" at the time and dates when "Jade Miller" was communicating and sending to and receiving images from the two minor victims.  Returns from Comcast Communications identified the owner of all five IP address accounts as Omar Santiago-Muniz, 524 Walnut Street Apt. 2, Pottstown, Montgomery County, PA

19464.  Further investigation identified Santiago-Muniz as a corrections officer at the Montgomery County Correctional Facility, Eagleville, PA.

Tpr Reppart, under the assumed user identities of one of the victims, maintained contact with "Jade Miller" and another Facebook user account in the name of "Elizabeth Ridner," which was associated with "Jade Miller" from approximately June 29 through approximately July 21, 2017.  Tpr Reppart documented several instances where the user of "Jade Miller" and later "Elizabeth Ridner" attempted to arrange meetings with the victims to engage in sex acts, including oral, anal, and vaginal sex. In the conversations, the girls, and Tpr Reppart posing as one of the girls, were told that an adult male would be their "trainer" and would engage in oral and vaginal sex with them as part of the training. Numerous pornographic images of adults having oral, anal, and vaginal sex were sent to the girls—and they were told that they would be doing what they saw in the photos. When the "Jade Miller" account was shut down, the defendant used another account, "Elizabeth Ridner," to continue his chats with the victims and eventually the undercover agent.

On July 21, 2017, PSP executed a search warrant at the residence of Santiago-Muniz. Santiago-Muniz agreed to speak with the Troopers and answer questions after the Troopers advised Santiago-Muniz that he was free to leave and not under arrest and did not have to talk with them. Santiago-Muniz admitted to communicating with a girl under the age of 18 from McAdoo, PA, for approximately three weeks. He stated the conversations were to set up a meeting at a park near her home to discuss "modeling" in a "bathing suit." Santiago-Muniz stated that he asked Victim #1 her age and she responded 11. He stated several of his conversations with Victim #1 were related to face-to-face meetings but the meetings never happened because he was busy. Santiago-Muniz admitted that he used the Facebook user accounts of "Kyle Richards," "Elizabeth Ridner," and "Jade Miller." Santiago-Muniz stated that he had sexually related conversations with five-to-six girls recently. He stated that he had been chatting with young girls for about six months, some in New York, Pennsylvania, and Florida. He stated that he had sex-related conversations with underage girls three-to-four times. During some of the chats, the girls sent him pornographic photos, he said, and he had chats about meeting with the underage girls. He

specifically mentioned communicating with Victim #1 (accurately stating her name) about modeling, and about meeting her near a park, and he knew she was 11-years-old. He claimed that he would never have actually met with Victim #1, explaining that it was an "online fantasy."

Electronic storage media was seized and Santiago-Muniz was arrested by state law enforcement and arraigned on July 21, 2017. As noted above, the IP addresses used by "Jade Miller" and Elizabeth Ridner" during the relevant chats with the victims were traced to the defendant at his residence.

PSP received information from the Kentucky State Police (KSP) that two minor victims were identified by KSP sending child pornography to Facebook user "Kyle Richards" at "Kyle Richards'" request. A picture of Santiago-Muniz was sent from the "Kyle Richards" FACEBOOK account to one of the Kentucky victims. The IP address for "Kyle Richards" was also traced to the defendant at his residence. During these chats, including one with a 10-year-old girl, the defendant sent her photos of adult pornography, told her she was pretty, and said he would like to "train" her.

12

Throughout the enticement activity with the Pennsylvania victims, Santiago-Muniz posed as a woman who was involved in nude modeling. Santiago-Muniz told the victims that they use models as young as 9 and 10. He had the girls first send them photos of themselves in bras and panties, and then said they would make great models and he would pay them $50 each. He repeatedly sent them graphic adult pornography of adult men and women having vaginal, anal, and oral sex. He told the girls that he would be sending a male "trainer" who would teach them how to do the sex acts depicted in the images he sent to them. He told them they would be paid $50 each training session and the training was free, and guaranteed them that no one would know about it. He told them that the male model would come to their town and meet with them somewhere to do the "training." He asked them: "Like do your parents let you go on walks alone?" He asked them: "Like would you be comfortable naked around someone? It's just the guy model and that's it."

After the girls sent him the photos of themselves in bras and panties, he asked them: "And hey if you don't mind can you and your sister take a photo for me naked with no clothes on for tomorrow? I

want to start a modeling profile for you guys because I think you guys
will be pros at it (smiley face)." He further assured them that "the
photos just stay with me and the guy model no one else sees them."

The girls took and sent the photos requested. The defendant told
them: "you guys are so pretty. I added those to your modeling profile
(smiley face)." He also told them they had "pretty names." He also said,
"You guys can send me photos anytime you want so that I can put them
in your folder. (smiley face)." Then he sent them more photos of naked
adults in various sexual positions, and asked them: "And what's your
favorite photo from those?"

In another chat, the defendant tells Victim #1 that he is talking to
"one of the girls that's going to get trained soon too . . ." and states her
name, and says: "She's your age." Then he sent the victim more
pornographic photos of adults having sex in various positions. He told
the victim that the girl is getting taught next week, and then he asked
Victim #1: "Are you and your sister ready to be taught." When the
victim said, "yea, Do they give us each 50," the defendant responded,
"Yup but make sure your parents don't see it or they will ask you about
it." He told her that they will get $50 each time they "do it," and said

that the model will "pick you and your sister up and take you to the hotel where he is staying and you guys can get naked and train."

In a subsequent chat, the defendant told the victim, "you guys will do what they are doing in the photos." When the victim asked if the model would put his "Dick" in us, the defendant said, "Just a little bit. But it's fun though." He further told her: "No one will know it will be our secret." He further told the victim: "Pretty much you will do what you see in the photos. You will be able to play with his dick and he will play with your pussy. And just have fun." The defendant assured the victim that they will each get $50. He then sent them more photos of adults having vaginal, anal, and oral sex, and said: "You guys will do that." He then said, "I will be so proud of you guys since you guys wouldn't be virgins anymore (smiley face)." When the victim asked, "Will we kiss," the defendant replied: "Yup everything. He will kiss you and your sister all over your bodies. And he will use his tongue to taste your pussy. And he will let you suck on his dick like on the photos." The defendant assured the victim that "before he cums he will let you and your sister rub his dick so you can make him cum. That way you can see when it comes out." He told the 10-year-old victim: "Just enjoy it. He's

going to pop you and your sisters cherry so you might bleed a little bit but that's normal the first time. Every girl does. The second time you won't." He then asked the victim if she got her period yet, and said that "its . . . like having your period but only for a day. So the blood is normal. It's not a lot. And after he's done he will give you and your sister a quick bath that way your (sic) clean when you go home and no one knows."

Then the defendant asked Victim #1: "Could you spread your legs apart to take a photo? I just wanna see what it looks like." He told her to have her sister help her. "I just want to see if it's ready. We can tell if it's ready to have sex or not." The girls then took photos of each other with their legs spread apart showing their vaginas. The defendant commented: "Yea you guys are ready (smiley face). They look real nice. He will love it." Later on, the victim asked if it was going to hurt, and the defendant replied: "A little bit because at first our pussies are really tight and it takes a bit to expand. But the more he slides his dick in the better it gets."

Later, the defendant sent the victims a video of adults having sex in various positions, and said: "This will be some of the things you

would do. Watch it and let me know if you enjoyed it hun." The defendant said the model will "teach you" how to do such things, and remarked, "you would do great." And, "Practice makes perfect (smiley face)." He further told the victim: "If you keep it a secret you can practice as much as you want." He then sent the victims more images of adults having sex in various positions. The defendant told the victim that a few of the images involve a girl age 14. At one point, the victim asked the defendant if she (the victim) is pretty, and the defendant replied: "You are gorgeous."

The nature and circumstances of the offenses are lurid, disgusting, and frightening. The defendant manipulated two young girls into taking pornographic photos of themselves and sending them to him. He groomed them. He represented himself as a woman who runs a modeling agency. He told them how pretty they were. He told them that other girls their age were doing it. He sent them numerous adult pornography photos to get them comfortable with nudity and sex.  He offered them $50 each to engage in oral sex and vaginal sex and anal sex with the "model." He made it sound normal for 9-year-old and a 10-year-old to have sex with adults, and to be "trained" to have sex with

adults. He told them to keep this a secret from their parents. He made arrangements to meet with them at a park near their home, and said they would go to a hotel for the sex training. The defendant intended to commit statutory rape of two girls age 9 and 10. This is dangerous, horrific, and predatory behavior.

The seriousness of these offenses is indicated by the mandatory minimums and potential penalties associated with the offenses.

Thus, the first factor the Court must consider, the nature and circumstances of the offense, weighs strongly in favor of detaining the defendant.

## 2. The weight of the evidence.

As recited above, the weight of the evidence is strong. The evidence of the chats and the images that the victims sent to the defendant show unmistakably that the defendant committed the offenses of production and attempted production of child pornography and sexual enticement of a minor. Furthermore, the defendant confessed to this conduct, admitted to using the "Jade Miller" "Elizabeth Ridner" and "Kyle Richards" accounts, and admitted to chatting about

sex with at least five other minors. The IP addresses related to the relevant chats with the victims are all traceable to the defendant at his residence. There is evidence that he chatted with a victim in Kentucky and used the same method of operation—sending adult pornographic images, seeking to "train" the 10-year-old victim

In summary, the weight of the evidence is strong and this factor, too, supports the continued detention of the defendant.


### 3. <u>The history and characteristics of the defendant</u>.

This factor includes the defendant's family ties, employment, length of residence in the community, community ties, past conduct, history of drug use, criminal history, record concerning court appearances, and whether at the time of the current offense, the defendant was on probation or release pending trial for another offense.

As noted above, the defendant has community ties and did not flee while on bail for the related state offenses. Now, however, he is facing much greater penalties if convicted, including lengthy mandatory minimum sentences and a potential life sentence. This factor, even if it weighs on the side of release, can be outweighed by other factors

presented by the government and result in detention pending trial. <u>See</u> <u>United States v. Hite</u>, 76 F. Supp. 3d 33, 42–43 (D.D.C. 2014), <u>aff'd,</u> 598 Fed. Appx. 1 (D.C. Cir. 2015) (not precedential).

The defendant worked as a corrections officer and in the Army National Guard. As noted above, however, he had several disciplinary infractions between 2015 and 2017, and that included being deceptive and untruthful about one of his infractions.

4. <u>The nature and seriousness of the danger to any person or the community</u>.

The defendant poses a serious danger to the community, especially young minor females, if released. He has already confessed to manipulating at least two young girls into taking sexually explicit photos of themselves and sending them to him. The chats show that he groomed and manipulated two victims by telling them how pretty they were, telling them that other girls their age do this kind of thing, sending them adult pornography to make them feel more comfortable about it, promising to pay them for engaging in sex with a "trainer," and using smiley faces and language used by children of their age. His victims are very young and vulnerable, which makes him even more dangerous. His

own statement to agents, the chats, and the information from Kentucky

law enforcement show that he is a serial predator of very young girls.

This factor further reinforces the presumption against his release.

In a similar case, the Second Circuit Court explained that,

"[o]verall, the evidence alleged in the indictment, combined with the

additional evidence presented to the District Court, provided an ample

basis for concluding that the activity for which the defendant was

indicted was not isolated in nature and that he poses a danger to the

community." United States v. Minnici, 128 Fed. Appx. at 829. Courts

have reached similar conclusions in cases involving enticement of

minors and/or production of child pornography. See United States v.

Abad, 350 F.3d 793, 798 (8th Cir. 2003) (the nature of the crime

charged-sexual activity with a minor-weighs heavily against release);

United States v. Brownlee, No. 2:11-CR-101, 2011 WL 2112535, at *3

(W.D. Pa. May 26, 2011) (overturning magistrate judge's decision to

grant pretrial release to defendant charged with distributing child

pornography who attempted to meet prepubescent minors for a sexual

encounter); United States v. Winther, No. CRIM. 11-212, 2011 WL

1882453, at *1–2 (E.D. Pa. May 18, 2011) (defendant rebutted

presumption, but government presented sufficient evidence in support
of factors to detain the defendant pending trial); United States v.
Schenberger, 498 F. Supp. 2d 738 (D.N.J. 2007) (defendant, a police
officer who was charged with receiving and distributing child
pornography, was not entitled to bail despite facts that he was not
charged with physically abusing a minor, and agreed not to use or
access a computer; defendant was arrested moments before he believed
he was going to view on a webcam the live molestation of a five-year old
girl, defendant had already given a written statement confessing his
guilt and indicated that he intended to plead guilty, defendant betrayed
his oath of office and the trust placed in him by his family, employer
and the community at large, and, given his knowledge of police
practices and procedures and his computer expertise, it was not far-
fetched to believe that he would be able to avoid detection if he fled);
United States v. Conover, No. 12-2080 JS, 2012 WL 4846132, at *5
(D.N.J. Oct. 10, 2012) (Courts do not have to wait for direct proof that a
defendant molested a minor before they find the defendant is a danger
to the community; there can be no doubt that those who consume and
distribute this material [child pornography] encourage its production,

as there can be no doubt that the production of such materials involves the abuse of children"); United States v. Pollard, No. 13-20887, 2015 WL 1541786, at *2 (E.D. Mich. Apr. 7, 2015) (there is a risk of flight in light of the mandatory minimum of 15 years defendant is facing and in light of the allegations by the minor victims of violence, forced sex trafficking and production of child pornography); United States v. Curry, No. 13-20887, 2015 WL 128018, at *2 (E.D. Mich. Jan. 8, 2015) (there is a risk of flight in light of the mandatory minimum of 15 years the defendant is facing and in light of the allegations by the minor victims of violence, forced sex trafficking and production of child pornography); United States v. Burdette, 813 F. Supp. 2d 1, 4 (D.D.C. 2011) (the weight of the factors enumerated in § 3142(g) supports defendant's continued detention; the offense charged is a crime of violence; the weight of the government's evidence against defendant is strong; given the nature of that evidence, the Court finds that defendant's release would pose a significant danger to a particularly vulnerable segment of the community—children); United States v. Heggebo, No. 10-MJ-61, 2010 WL 900172, at *4 (N.D. Iowa Mar. 12, 2010); United States v. Cocco, 604 F. Supp. 1060, 1063 (M.D. Pa. 1985)

(upholding magistrate judge's denial of bail for defendant charged with receiving child pornography).

Based on all of the above, the government respectfully but strongly urges the court to deny the defendant's motion for pretrial release.

Respectfully submitted,

DAVID J. FREED
United States Attorney

 s/ Francis P. Sempa

FRANCIS P. SEMPA
Assistant U.S. Attorney
ID#41294
Suite 311, Federal Building
Scranton, PA 18503
(570) 348-2800 fran.sempa@usdj.gov

Date: November 27, 2017

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on November 27, 2017, she served a copy of the attached:

## <u>GOVERNMENT'S RESPONSE TO<br>DEFENDANT'S PETITION FOR RELEASE</u>

by ECF:

Zak Goldstein, Esq.


/s/Luann Manning
_____
LUANN MANNING
Supervisory Legal Assistant